UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TURFCO MANUFACTURING, INC., | Case No. 25-cv-2475 (LMP/JFD) |
| Plaintiff, | |
| v. | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| MTE EQUIPMENT SOLUTIONS, INC., | |
| Defendant. | |

Brayanna J. Smith and Philip R. Schenkenberg, **Taft Stettinius & Hollister LLP, Minneapolis, MN**, for Plaintiff.

Aimée D. Dayhoff and Samantha F. Carmickle, **Winthrop & Weinstine, P.A., Minneapolis, MN**; and Greg B. Whiston, **Seigfreid Bingham, Kansas City, MO**, for Defendant.

      Plaintiff Turfco Manufacturing, Inc. ("Turfco"), a manufacturer of lawncare and turf maintenance equipment, seeks a declaratory judgment against one of its dealers, Defendant MTE Equipment Solutions, Inc. ("MTE"), to resolve a business dispute between the parties. *See generally* ECF No. 1-1. MTE moves to dismiss Turfco's complaint, arguing that declaratory relief is unavailable to Turfco. ECF No. 10. For the following reasons, MTE's motion is denied.

## FACTUAL BACKGROUND

      Turfco is a manufacturer of lawncare and turf maintenance equipment. ECF No. 1-1 ¶ 6. Turfco sells its products through its dealers, whom Turfco supplies with Turfco-manufactured equipment based on a course of dealing by which the dealer submits an order and Turfco then processes and supplies the order. *Id.* ¶ 8. One of Turfco's dealers is MTE.

1

*Id.* ¶ 10.  MTE sells Turfco products in six states: Connecticut, Massachusetts, New Hampshire, New York, Rhode Island, and Vermont.  *Id.* ¶ 11.  Over the course of their 47-year business relationship, Turfco and MTE did not have written dealer agreement in place.  *Id.* ¶¶ 7–10.

Prior to 2019, MTE's annual volume of Turfco orders across all six states was more than $500,000.  *Id.* ¶ 13.  However, from 2019 to 2021, MTE's orders of Turfco products decreased, and Turfco sensed that MTE was less focused on selling to golf courses, which is one of Turfco's primary markets.  *Id.* ¶ 14.  Accordingly, on April 19, 2021, Turfco sent a letter to MTE, suggesting that the parties "make a change" in their relationship, which would include MTE's return of existing inventory and repurchase of MTE's inventory by Turfco, effective July 19, 2021.  *Id.* at 12.  On May 6, 2021, MTE responded to Turfco by email, recognizing that MTE had delivered "a lackluster sales effort" to Turfco and proposing a "growth strategy" to reinvigorate sales.  *Id.* at 14–15.

On May 18, 2021, Turfco responded that it did not feel that "the Turfco line is a good fit for [MTE's] plan" and reiterated its desire for an "amicable transition."  *Id.* at 20.  MTE responded, asking Turfco to "make a reasonable offer to MTE for the surrender of the legal dealership rights under state law in any portion of the territory that MTE currently services."  *Id.*  At the same time, MTE "reiterate[d] [its] desire to maintain [its] relationship with Turfco across [its] entire service footprint."  *Id.*  MTE then "encourage[d] [Turfco] to understand MTE's legal rights as a dealer before pursuing a unilateral cancellation of those rights."  *Id.*  Turfco and MTE engaged in additional negotiations to terminate Turfco's relationship with MTE, but the parties did not come to an agreement.  *Id.* ¶¶ 18–20.  MTE

2

therefore continued to serve as a dealer for Turfco, and for the next two years, MTE continued to place orders with Turfco. *Id.* ¶ 21.

In 2023, Turfco adopted an allocation policy in response to changing market conditions. *Id.* ¶¶ 22–23. The allocation policy placed a cap on the volume of equipment orders that dealers could place and reduced the discount that dealers could receive on Turfco's equipment for those orders if a dealer's annual orders totaled less than $150,000. *Id.* ¶ 23. Because MTE's annual orders totaled less than $150,000, on August 23, 2023, Turfco sent an email to MTE with the draft allocation policy. *Id.* at 23. MTE asked for the details of the new allocation policy and protested that Turfco was "looking to squeeze [MTE] out by pushing [it] to the bottom." *Id.* On November 9, 2023, Turfco sent the final allocation policy for 2024 orders to MTE, which provided that: (1) MTE's sales allocation for 2024 would be capped at $88,202; (2) MTE's discount on Turfco products would be reduced from 25% to 15%; and (3) MTE needed to place 60% of the orders for 2024 by December 15, 2023. *Id.* at 25–26. MTE objected to the allocation policy, deeming it "discriminatory towards MTE." *Id.* at 25. Nonetheless, Turfco supplied products to MTE consistent with the 2024 allocation policy. *Id.* ¶ 27.

On January 7, 2025, Turfco informed MTE that it would again apply the allocation policy to MTE's orders in 2025. *Id.* at 29. After some back-and-forth discussion between the parties, on April 15, 2025, MTE accused Turfco of implementing the allocation policy in a discriminatory manner that violated the dealer statutes in the six states where MTE sells Turfco products. *Id.* at 32–34. MTE further requested Turfco provide MTE with "a copy of any amended dealer agreement [Turfco is] applying to MTE and [Turfco's] other

3

dealers that supports [Turfco's] treatment of MTE in a non-discriminatory manner regarding both pricing, supply and exclusivity." *Id.* at 32.

On May 15, 2025, Turfco sued MTE in Minnesota state court, seeking a declaration that the allocation policy does not violate the dealer and consumer protection statutes in the six states where MTE sells Turfco products. *See generally id.* at 2–9. MTE removed this action to federal court,[1] ECF No. 1, and subsequently moved to dismiss Turfco's complaint, ECF No. 10.

## ANALYSIS

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

MTE asserts that declaratory relief is unavailable to Turfco for two reasons: (1) Turfco seeks only retrospective relief, and (2) Turfco fails to allege an underlying cause

---

[1] Turfco is a Minnesota corporation, MTE is a New York corporation, and no party disputes that the amount in controversy in this case is greater than $75,000. *See* ECF No. 1 ¶¶ 5, 12. All of the requirements for diversity jurisdiction are therefore satisfied. *See* 28 U.S.C. § 1332(a)(1).

of action against MTE distinct from its declaratory-judgment cause of action. ECF No. 11 at 8–11. Neither argument is persuasive, as explained below.

I.      **Whether Turfco Impermissibly Seeks Retrospective Declaratory Relief**

Turfco seeks relief under Minnesota's Declaratory Judgment Act ("MDJA"), Minn. Stat. § 555.01 *et seq.* ECF No. 1-1 ¶ 42. The MDJA "grants courts the power to declare a party's legal 'rights, status, and . . . relations' through the issuance of a declaratory judgment." *Weavewood, Inc. v. S & P Home Invs., LLC*, 821 N.W.2d 576, 579 (Minn. 2012) (quoting Minn. Stat. § 555.01). The MDJA serves a "preventative" purpose, as it allows parties "to be relieved of an uncertainty and insecurity arising out of an actual controversy with respect to their legal rights before those rights actually have been invaded." *McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 339 (Minn. 2011) (citations omitted) (internal quotation marks omitted). As such, the policy behind the MDJA "is to allow parties to determine certain rights and liabilities pertaining to an actual controversy before it leads to repudiation of obligations, invasion of rights, and the commission of wrongs." *Metro. Sports Facilities Comm'n v. Minn. Twins P'ship*, 638 N.W.2d 214, 227 (Minn. Ct. App. 2002).

MTE interprets the "preventative" purpose of the MDJA to prohibit a party from seeking a declaratory judgment that adjudicates the legality of past conduct. ECF No. 11 at 8–9. MTE then argues that Turfco's requested relief—a declaration that the allocation policy does not violate various state laws—seeks only to establish the legality of past conduct, as the allocation policy was first implemented in November 2023. *Id.* at 9–10.

MTE accordingly surmises that the purported "commission of wrongs" and "invasion of rights" occurred long in the past, rendering declaratory relief unavailable. *Id.*

As an initial matter, it is not clear whether the MDJA forecloses retrospective declaratory relief. MTE cites no case law holding that the MDJA *requires* a party to bring a claim under the MDJA before the alleged wrongful conduct occurs.[2] MTE cites a number of cases purportedly establishing that the "design[]" and "policy" of the MDJA is to "settle uncertainties prior to full-blown development." *Holiday Acres No. 3 v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 271 N.W.2d 445, 447 (Minn. 1978); *Culligan Soft Water Serv. of Inglewood, Inc. v. Culligan Int'l Co.*, 288 N.W.2d 213, 215–16 (Minn. 1979) ("The policy behind the creation of declaratory judgments is to allow parties to determine certain rights and liabilities pertaining to an actual controversy before it leads to repudiation of obligations, invasion of rights, and the commission of wrongs."). But these cases simply express one non-exhaustive purpose of the MDJA, not a doctrinal limitation on a remedy that is to be "liberally construed and administered." Minn. Stat. § 555.12.

The same can be said for MTE's heavy and misplaced reliance on the Minnesota Supreme Court's holding that a declaratory-judgment action is "singularly appropriate for the resolution of disputes before the commission of wrongs." *Midwest Motor Express, Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 120*, 512 N.W.2d 881, 884 (Minn. 1994). The use of the term "singularly" in *Midwest Motor Express*

---

[2] In contrast, the Eighth Circuit has squarely held that the federal Declaratory Judgment Act does not provide for retrospective declaratory relief. *See Just. Network Inc. v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019).

did not express a limitation on the MDJA; in fact, that holding was made to *reject* a party's narrow view of justiciability. *See id.* at 883–84. And that holding merely expressed the long-established principle that while most legal controversies require "full-blown development" before they are resolved, *Holiday Acres No. 3*, 271 N.W.2d at 447, the MDJA is unique (that is, singular) because it allows a declaration of rights when only the "ripening seeds of a controversy" are present. *McCaughtry*, 808 N.W.2d at 338 (quoting *State ex rel. Smith v. Haveland*, 25 N.W.2d 474, 477 (Minn. 1946)).

More to the point, just because the policy purpose of the MDJA is to declare parties' rights and liabilities before "the commission of wrongs" does not mean that it is inappropriate to invoke the MDJA to declare those parties' rights and liabilities after the commission of those wrongs. *See Metro. Sports Facilities Comm'n*, 638 N.W.2d at 227. Indeed, nothing in the text of the MDJA suggests that its scope is limited to prospective declaratory relief, and it is not the role of this Court to "insert words or meanings that were intentionally or inadvertently omitted by the Legislature." *Harkins v. Grant Park Ass'n*, 972 N.W.2d 381, 387 (Minn. 2022) (citation omitted). In fact, the text of the MDJA seems to undermine MTE's position, as it explicitly provides that a contract may be construed "either before *or after* there has been a breach thereof." Minn. Stat. § 555.03 (emphasis added). And the Minnesota Supreme Court has explained that a party seeking declaratory relief must "possess a bona fide legal interest which *has been* [that is, in the past], or with respect to the ripening seeds of a controversy *is about to be* [that is, in the future] affected in a prejudicial manner." *Kennedy v. Carlson*, 544 N.W.2d 1, 6 (Minn. 1996) (emphasis

7

added) (citation omitted). With neither case law nor the statutory text on MTE's side, MTE's argument rests on shaky ground.

That said, even if the MDJA is limited to prospective declaratory relief, Turfco's complaint pleads entitlement to such relief. Contrary to MTE's suggestion, the implementation of the allocation policy was not a one-and-done deal completed in November 2023 and extending in perpetuity. Rather, Turfco's complaint alleges that the allocation policy is applied on an annual basis. *See* ECF No. 1-1 ¶¶ 23, 28, 41. And the parties presently dispute whether the allocation policy can be applied to MTE for its orders in 2025, a sales period that has not yet concluded. *See id.* ¶¶ 31–33; *id.* at 32. Indeed, this lawsuit arises from an ongoing dispute about the proper allocation of Turfco products to MTE during 2025. *See id.* at 29 (MTE asserting in January 2025 it had $200,000 in "open orders" for 2025, and Turfco asserting that MTE was only entitled to $88,202 in Turfco products for 2025); *id.* at 34 (MTE asking Turfco to "discontinue [its] discriminatory practices" for 2025). A declaratory judgment in this case would therefore relieve the parties of "uncertainty and insecurity arising out of an actual controversy with respect to their legal rights before those rights actually have been invaded"—namely, by letting 2025 elapse without permitting MTE to exceed its allocation of $88,202 in Turfco products. *McCaughtry*, 808 N.W.2d at 339 (citation omitted) (internal quotation marks omitted). A

declaratory judgment is therefore appropriate to resolve this definite, genuine, and ongoing controversy.[3]  *See Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617–18 (Minn. 2007).

## II.     Whether Turfco's Complaint Asserts an Underlying Cause of Action

MTE next argues that Turfco fails to allege "an independent, underlying cause of action based on a common-law or statutory right," which MTE argues is a requirement of an MDJA action.  ECF No. 11 at 10–11 (citing *All. for Metro. Stability v. Metro. Council*, 671 N.W.2d 905, 916 (Minn. Ct. App. 2003)).  It is true that the MDJA is not "an express independent source of jurisdiction," *All. for Metro. Stability*, 671 N.W.2d at 915, and that "a complaint requesting declaratory relief must present a substantive cause of action that would be cognizable in a nondeclaratory suit," *Weavewood*, 821 N.W.2d at 579 (citation omitted) (internal quotation marks omitted).

But MTE takes the language in *Alliance for Metropolitan Stability* out of context.  In that case, the Minnesota Court of Appeals determined that a declaratory judgment was inappropriate because a private right of action did not exist under the land-use statute the plaintiffs argued was violated.  *See All. for Metro. Stability*, 671 N.W.2d at 916.  As the Minnesota Court of Appeals later clarified, all *Alliance for Metropolitan Stability* stands for is the proposition that the MDJA "cannot create a cause of action that does not otherwise exist."  *Hempel v. Creek House Tr.*, 743 N.W.2d 305, 314 (Minn. Ct. App. 2007) (citation omitted).  In other words, when a party has no right to sue under a statute, a plaintiff has

---

[3]     MTE does not dispute that a judiciable controversy exists between Turfco and MTE. *McCaughtry*, 808 N.W.2d at 337 ("[A] declaratory judgment action must present an actual, justiciable controversy.").

9

no right to a declaration of his rights under that statute. But when a "claim of right is based in contract," *id.*, or on a statute conferring private rights, *Brown v. State*, 617 N.W.2d 421, 425–28 (Minn. Ct. App. 2000), a court does not "create" a cause of action by issuing a declaratory judgment, *see Hempel*, 743 N.W.2d at 314. Rather, that claim already exists.

Here, the claim of right is rooted in the state statutes identified in the complaint that prohibit unfair competition and dealership practices. ECF No. 1-1 ¶¶ 34–39. MTE asserts that Turfco's allocation policy runs afoul of these state statutes and has threatened legal action against Turfco on the basis of these laws. *See* ECF No. 1-1 at 32–34. That threat is not empty: MTE indeed has a private cause of action to sue Turfco under these various state laws. *See* Conn. Gen. Stat. § 42-110g; Conn. Gen. Stat. § 42-133g; N.H. Rev. Stat. Ann. § 357-C:12; R.I. Gen. Laws § 6-50-7; R.I. Gen. Laws § 6-54-7; Vt. Stat. Ann. tit. 9, § 4079.[4] Accordingly, these state statutes form the "underlying substantive law" of this declaratory-judgment action, along with Turfco's "applicable defenses" to liability under those statutes. *See Weavewood*, 821 N.W.2d at 579. That satisfies the requirement that "a

---

[4] It is not clear if MTE has a cause of action to enforce the Massachusetts Equipment Dealer Law, the Rhode Island Equipment Dealership Act, and New York statutory law against Turfco. *See* ECF No. 1-1 ¶¶ 35, 37–38. Because MTE did not raise the lack of a cause of action in these statutes as a reason for dismissal, the Court need not address the issue now. *See Saunders v. Farmers Ins. Exch.*, 537 F.3d 961, 966 n.5 (8th Cir. 2008) (explaining that a court "need not decide" an issue not raised by the parties). But the Court observes that if MTE has no cause of action to sue Turfco under these state statutes, then Turfco will need to show another cause of action, whether statutory or common-law, that would allow MTE to enforce these state laws against Turfco (and correspondingly, would allow the Court to adjudicate Turfco's rights and responsibilities under these laws). *See All. for Metro. Stability*, 671 N.W.2d at 916 (holding that a declaratory judgment is inappropriate when the plaintiffs seek a declaration of rights under a statute that does not "create a private cause of action").

complaint requesting declaratory relief must present a substantive cause of action that would be cognizable in a nondeclaratory suit." *Id.* (citation omitted) (internal quotation marks omitted).

To the extent MTE argues that only it can bring a declaratory judgment action against Turfco because it, not Turfco, would possess the underlying cause of action under the state statutes, that is not the law. All that is required is that "a complaint requesting declaratory relief must present a substantive cause of action"—it does not matter to whom that cause of action belongs. *Weavewood*, 821 N.W.2d at 579; *see Brown*, 617 N.W.2d at 425 (explaining that "[s]ome recovery theory must underlie a declaratory judgment demand," without specifying to whom recovery is to be made). MTE's position would undermine the MDJA's "preventative" purpose, as it would strip putative defendants like Turfco of the ability to clarify their legal rights and responsibilities before embarking on conduct that would potentially lead to liability. *McCaughtry*, 808 N.W.2d at 339 (citation omitted). Not to mention that MTE's position conflicts with a wealth of MDJA case law permitting a putative defendant to seek declaratory relief before a putative plaintiff asserts the cause of action underlying the MDJA action. *See, e.g.*, *Am. Fam. Ins. Co. v. Walser*, 628 N.W.2d 605, 608 (Minn. 2001) (insurer brought MDJA action to clarify insured's coverage, even though it would be the insured who would possess the cause of action for breach of insurance contract for wrongful denial of coverage); *St. Paul Fire & Marine Co. v. Seagate Tech., Inc.*, 570 N.W.2d 503, 505 (Minn. Ct. App. 1997) (same); *Cont'l W. Ins. Co. v. Toal*, 244 N.W.2d 121, 122 (Minn. 1976) (same).

In sum, Turfco may proceed with its declaratory-judgment action against MTE.

## **CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that MTE's Motion to Dismiss (ECF No. 10) is **DENIED**.


Dated: October 1, 2025                               *s/Laura M. Provinzino*
                                                     Laura M. Provinzino
                                                     United States District Judge